

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00213-CR

MELVIN HALL JR.                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Melvin Hall Jr. appeals his conviction for three counts of aggravated sexual assault of a child and two counts of indecency with a child. In two points, Hall argues that the trial court abused its discretion by admitting an

------

[1]*See* Tex. R. App. P. 47.4.

extraneous offense in the guilt/innocence phase and that he was denied his Sixth Amendment right to effective assistance of counsel. We will affirm.

## II. FACTUAL BACKGROUND

Hall, a retired Major League Baseball player, recruited the complainant at age twelve to play on a competitive basketball team that he coached. The complainant began playing on Hall's basketball team the following fall around the time that she turned thirteen. During this time, Hall asked if he could move in with the complainant's family, and he stayed at their home for three to five months while a house was allegedly being built for him in Southlake. While Hall was living with the complainant's family, he began to masturbate in front of the complainant, to kiss her, and to tell her that she was pretty. The complainant testified that she felt like she was in a boyfriend/girlfriend relationship with Hall.

In the fall after the complainant turned thirteen, Hall moved into an apartment with a lady named Jodi and his son named Gavin. The complainant went to Hall's apartment on many occasions to babysit Gavin. Hall eventually started putting his hand down the complainant's pants and put his finger inside her vagina. When Hall kissed the complainant, he asked her to tell him that she loved him. Hall also asked the complainant to touch his penis, and he would put his hand on her hand and show her what to do. Hall exposed the complainant to pornography on television at his apartment. Throughout this time, Hall continued to coach the complainant and to take her to basketball practices; on the way there, Hall would put his hand in the complainant's shirt to touch her breasts and

2

give her a look, and she would perform oral sex on him while he was driving her to basketball practice.

When the complainant turned fifteen, she "felt violated, . . . . like that was not supposed to happen."  She eventually told a few people but told them not to tell anyone.  In 2007, the complainant talked to the police and gave a statement.  Hall was indicted later that year for the offenses described above.

### III.  EXTRANEOUS OFFENSE TESTIMONY CAME IN WITHOUT OBJECTION

The complainant's brother testified that sometimes Hall would take off his pants in front of him and the complainant, would lay on the floor or the bed without his underwear on, and would put his feet in the air and "sort of kick them."  Hall objected to this testimony as inadmissible extraneous offense evidence; Hall did not ask for, and did not receive, a running objection.  In his first point, Hall argues that the trial court abused its discretion by admitting this extraneous offense testimony by the complainant's brother during the guilt/innocence phase of the trial because the State had no need for it and because the unfair prejudice from the testimony substantially outweighed any minimal probative value it might have had.  The State argues that Hall waived this contention because the complainant subsequently testified without objection to these same facts.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d

3

249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

To preserve error, a party must continue to object each time the objectionable evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). This rule applies whether the other evidence was introduced by the defendant or the State. *Id*.

Here, the complainant testified after her brother, "Well, it first started off, he [Hall] would lay on his back, and he would have his legs in the air, and he would shake his legs back and forth, and he didn't have any clothes on." Hall did not object to this testimony by the complainant. Because Hall failed to object each time the extraneous offense was offered, he failed to preserve his complaint and has thus forfeited this argument on appeal. *See Martinez*, 98 S.W.3d at 193; *see also Cole v. State*, 987 S.W.2d 893, 895 (Tex. App.—Fort Worth 1998, pet. ref'd) (holding that appellant's failure to timely object to victim's testimony concerning

4

various incidents where appellant touched her waived any error; the record reflected that appellant did not object until after three questions were asked about extraneous offenses). We overrule Hall's first point.

### IV. INEFFECTIVE ASSISTANCE NOT SHOWN ON THE RECORD

In his second point, Hall argues that he was denied his Sixth Amendment right to effective assistance of counsel because his three attorneys failed to object to extraneous offense evidence; elicited prejudicial evidence of other victims; failed to object to bolstering by the State and, in fact, called a witness who bolstered the complainant's credibility; failed to request a reasonable doubt instruction as to extraneous offenses; and failed to request a limiting instruction as to extraneous offense evidence which permitted the jury to consider character propensity as guilt evidence.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsels' representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsels' deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

5

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsels' assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsels' representation is highly deferential, and the reviewing court indulges a strong presumption that counsels' conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). "But, when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for

6

acting as she did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

The second prong of *Strickland* requires a showing that counsels' errors were so serious that they deprived appellant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

## B. Ineffectiveness Not Raised in Motion For New Trial

Although Hall filed a motion for new trial, he did not raise ineffective assistance in the motion. Consequently, any trial strategy that Hall's attorneys may have had for their challenged actions is not contained in the record. Hall argues, however, that no reasonable trial strategy exists that could justify his trial counsels' conduct. Accordingly, Hall argues that his failure to raise ineffectiveness in his motion for new trial and to create a record at a motion for new trial hearing concerning his trial counsels' strategy is not fatal to his appellate ineffectiveness claim. We will address each of Hall's allegations of ineffectiveness.

7

## C.    Failure to Object to Extraneous Offense Evidence

In his first ineffective assistance subissue, Hall argues that his attorneys were ineffective because they failed to object to the complainant's testimony before the jury that Hall had said to her, "Sally [complainant's basketball teammate] is having sex with me.  Why don't you?"  During a pretrial hearing, the trial court heard Hall's motion in limine concerning this statement.  The State objected to the granting of a motion in limine concerning this statement, explaining, "[W]e would like a clarification . . . [u]nder extraneous offenses, we would still want to be allowed, before approaching, to go into extraneous conduct between the victim and defendant, 38.37 information."  The State explained that it was not offering the statement for the truth of the matter asserted but to show "the manipulative behavior of this defendant in attempting to persuade the victim that it was okay to have sex with him, which goes right to the heart of 38.37."  After allowing both the State and Hall to further summarize their respective positions, the trial court ultimately ruled that "if [the statement is] being offered, not for the truth of the matter asserted, but to show relationship of the parties and the state of mind of the defendant, then I'll deny your motion in limine as to that statement."

The trial court determined that the statement fit into an exception to the rule excluding extraneous offense evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2010) (stating that notwithstanding rules 404 and 405, evidence of other crimes, wrongs, or acts committed by the defendant

8

against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including the state of mind of the defendant and the child).  Because the failure to object to admissible evidence is not ineffective assistance of counsel, *see Muniz v. State*, 851 S.W.2d 238, 258 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993), Hall's trial counsel were not ineffective for failing to object to this testimony by the complainant.

### D. Second *Strickland* Prong Not Established Via Complainant's Answer Implying Other Victims Existed

In his second ineffective assistance subissue, Hall argues that his trial counsel provided ineffective assistance when they elicited testimony from the complainant regarding other victims.  Specifically, Hall complains about the following testimony:

Q.  Why didn't you tell your dad right then that this man was abusing you or had abused you?

A.  Because people just -- I mean, people that don't know me, they can't -- I keep everything bottled up inside me.  I'm not someone who goes and tells things to -- people who know me, they know that.

So someone who looks on me like that, they wonder why, but people that know me understand.

Q.  You didn't think it was important enough to tell your father that a man that he was excited to see was, in fact, your abuser?

A.  Well, I thought it was just me.

Q.  You thought what was just you?

A.  I thought it was only happening to me, and I figured I could somehow get through it.

9

MS. DUNBAR [one of Hall's attorneys]: Objection, nonresponsive, Your Honor.

THE COURT: Overruled.

Hall argues that his trial counsel should have objected to the complainant's nonresponsive answer before asking, "You thought what was just you?" Hall further contends that his trial counsel's follow-up question compounded the problem.

Assuming, without deciding, that trial counsel's questioning above fell below reasonable professional standards in satisfaction of *Strickland*'s first prong, the record before us does not satisfy *Strickland*'s second prong. That is, the record does not reflect that this error—assuming it was error—was so serious that it deprived Hall of a fair trial, i.e., a trial with a reliable result. 466 U.S. at 687, 104 S. Ct. at 2064. The record reflects that the State did not mention the possibility of other victims in cross-examination or in closing arguments. The complainant's testimony about the acts that Hall had perpetrated against her was detailed and graphic and more prejudicial than this one-sentence insinuation that Hall had molested other girls. The State presented overwhelming evidence of Hall's guilt, aside from the complained-of testimony. Thus, after examining the record as a whole, we have a fair assurance that this one sentence of testimony by the complainant did not influence the jury or had but a slight effect. *See Prior v. State*, 647 S.W.2d 956, 959–60 (Tex. Crim. App. 1983) (holding that evidence of guilt in indecency with a child case was

10

overwhelming, even without the extraneous offenses; thus, the erroneous admission of the extraneous offenses did not contribute to the finding of guilt or to the punishment assessed and was therefore harmless); *Thomas v. State*, No. 01-07-00742-CR, 2008 WL 4757018, at *3 (Tex. App.—Houston [1st Dist.] Oct. 30, 2008, pet. ref'd) (holding any error in admitting extraneous offense testimony from psychological therapist harmless because complainant's testimony was "more detailed and graphic" and State presented overwhelming evidence of guilt, aside from complained-of evidence). Accordingly, any error by Hall's counsel in eliciting this one answer from the complainant does not meet the second *Strickland* prong. *See Maxie v. State*, No. 01-04-00524-CR, 2005 WL 2850228, at *7 (Tex. App.—Houston [1st Dist.] Oct. 27, 2005, pet. ref'd) (mem. op., not designated for publication) (stating that although cross-examination that bolsters rather than challenges the prosecution's case can be ineffective assistance of counsel, in this case, appellant failed to show that trial counsel was deficient when record was silent concerning trial counsel's motives for asking such questions; appellate court stated that "this is not one of those rare cases in which the record shows that no plausible strategy could have been employed").

## E. Bolstering Complainant's Credibility

In his third ineffective assistance subissue, Hall argues that his trial counsel provided ineffective assistance by calling a witness that the State used to bolster the complainant's credibility and by failing to object when the State

11

bolstered the complainant's credibility through a rebuttal witness, Derrick.[2] Hall's trial counsel called Jodi—the woman whom Hall lived with subsequent to staying at the complainant's house—to testify that she had never observed Hall viewing pornography with the complainant and had never been present during any such alleged viewing. During Jodi's cross-examination, the following exchange occurred:

> Q. [THE STATE] Let me ask you this: Have you ever found [the complainant] to be anything but credible to you?
>
> A. No.

Hall also complains that Derrick's testimony bolstered the complainant's credibility without objection from Hall's counsel:

> Q. [THE STATE] So of all of those girls, [the complainant] would be the most truthful of all of those young ladies?
>
> A. Without a doubt.
>
> . . . .
>
> Q. [THE STATE] There's no question as to her credibility?
>
> A. No, none whatsoever.

Hall relies on *Greene v. State*, in which defense counsel elicited inadmissible evidence, the appellant raised an ineffectiveness claim on appeal, and the appellate court held that no coherent trial strategy was at work in defense counsel's conduct. 928 S.W.2d 119, 124 (Tex. App.—San Antonio

---

[2]To protect the complainant's privacy as much as possible, we use only the first names of witnesses throughout the opinion.

12

1996, no pet.). Here, however, unlike in *Greene*, in the two exchanges Hall complains of, Hall's trial counsel did not elicit the testimony he claims constitutes bolstering; the prosecutor did. And although the court of criminal appeals has on many occasions condemned any effort on the part of the State to bolster the credibility of its witnesses by unsworn testimony, *see Hill v. State*, 659 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1983, no pet.) (listing five court of criminal appeals' decisions), the testimony here was not unsworn. Nor was the brief testimony about the complainant's credibility given by an expert. *See generally Sessums v. State*, 129 S.W.3d 242, 248 (Tex. App.—Texarkana 2004, pet. ref'd) (relying on rule of evidence 702—i.e., expert testimony that a particular witness is truthful is inadmissible—and holding that trial counsel's performance was deficient because he failed to object to four experts' testimony that child victim was telling the truth). Additionally, Hall's trial counsel did not delve into the reasoning behind the witnesses' beliefs that the complainant was telling the truth. *See generally Fuller v. State*, 224 S.W.3d 823, 835–36 (Tex. App.—Texarkana 2007, no pet.) (holding that there was no trial strategy for trial counsel to allow the State's witnesses to testify to the credibility and truthfulness of the victim's allegations and then, on cross-examination, to explore the foundation for that witness's belief in the credibility, believability, or truthfulness of the victim's allegations).

Finally, Hall's trial counsel effectively challenged the complainant's credibility, especially during closing argument. Hall's trial counsel argued,

13

So what they're doing is they're bolstering their witnesses. They're bolstering [the complainant] by saying that she's the most - - not only is she honest; she's a good person; she tells the truth.

But now, the last day, when they reopen their case, she's the most honest person ever. That's what they brought you.

Do you think they might be overshooting their mark a little here . . . .

Think about that when you go back there. Where is her mom? Where is the detective in this case? A criminal case with no detective.

No law enforcement personnel at all came in here and said, "You know what? I looked at the evidence in this case. I evaluated this case. Then I filed this case. I talked with the complainant in this case. I decided to file the case."

No detective put up here by the State in a criminal case. [The complainant] said she mailed her statement in. That's exactly what the State did. They mailed it in. The detective mailed it in.

. . . .

Now, you have to remember how old she is when she wrote that statement. This is 2007. This isn't 1999. This is a person with a 3.6 GPA from the University of Southern Mississippi.

But guess what? Four days - - two days before we start trial, that statement changes. She's had two years to call the detective and change her statement. Never did it. But its' changed after the District Attorney's office interviews Jodi.

And when Jodi['s] story didn't match up with [the complainant's] story, [the complainant] changed her story. Now, what do y'all think about that?

Eight years, never went to authorities. Two years, didn't change her statement. Three weeks before this trial, the DAs interview Jodi []. Four days - - or two days before trial, the story changes.

Thus, the record reflects that Hall's counsels' trial strategy very well could have been to permit the State to predicate its entire case on the credibility of the complainant, in fact to entice the State to overstate the complainant's credibility––the State elicited testimony and pointed it out in closing argument, that the

14

complainant was "[i]n the 200, girls, hundreds of girls I've coached, the most truthful"—and to then undermine the complainant's credibility. The record before us simply does not support Hall's contention that no reasonable trial strategy could have existed for his counsels' failure to object when the State twice elicited testimony from witnesses bolstering the complainant's credibility. Based on the record before us, Hall has failed to overcome the "strong presumption" that his trial counsel provided reasonably professional assistance. *See Salinas*, 163 S.W.3d at 740.

**F.    Failure to Request Reasonable Doubt Instruction and Failure to Request Appropriate Limiting Instruction**

In his fourth and fifth ineffective assistance subissues, Hall argues that his trial counsel rendered ineffective assistance by failing to request a reasonable doubt instruction as to any extraneous offense admitted and by failing to request that the trial court contemporaneously instruct the jury on the limited purpose and reason for admissibility of any extraneous offense evidence. Specifically, Hall contends that his trial counsel failed to request a limiting instruction when the complainant's brother testified that Hall would take off his pants and underwear, put his feet in the air, and kick and shake them.

As pointed out by the State, the complained-of testimony concerned background contextual evidence that was properly admissible pursuant to Texas Code of Criminal Procedure article 38.37. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. Moreover, Hall does not argue that his trial counsels' failure to

15

request a limiting instruction was so far below the range of professional norms that no trial strategy could exist justifying the conduct. The record before us contains no explanation for trial counsels' decision not to object. Absent an explanation for trial counsels' omissions, the failure to request a limiting instruction does not compel a conclusion that trial counsels' performance was deficient. *See Boyd v. State*, 811 S.W.2d 105, 112 (Tex. Crim. App.) (overruling appellant's claims of ineffective assistance of counsel after concluding that appellant was not deprived of effective assistance of counsel because he was not prejudiced by trial counsel's failure to request additional limiting instructions; "there was no error attendant to the omission of additional instructions"), *cert. denied*, 507 U.S. 971 (1991); *Beheler v. State*, 3 S.W.3d 182, 185–86 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that because the record was devoid of anything that reflected the defense counsel's reasoning for failing to request a limiting instruction on extraneous offenses, appellate court must defer to the *Strickland* presumption that defense counsel's decisions were a part of a sound trial strategy).

### G.    Cumulative Effect of Counsels' Deficient Performance

In his sixth ineffective assistance subissue, Hall argues that the cumulative effect of his trial counsels' performance was prejudicial to the outcome of his case. Because we have held above that the acts complained of by Hall do not meet both prongs of *Strickland* and thus do not constitute ineffective assistance,

16

the cumulative effect of Hall's trial counsels' performance was not prejudicial to the outcome of his case.

Having disposed of all of Hall's ineffective assistance subissues, we therefore overrule Hall's second point.

## V. CONCLUSION

Having overruled both of Hall's points, we affirm the trial court's judgment.


SUE WALKER
JUSTICE


PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)


DELIVERED:  November 4, 2010