

# NUMBER 13-23-00223-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RUDY VALDEZ,                                                                      Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant Rudy Valdez appeals his conviction for continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02. The jury assessed punishment at life imprisonment, and the trial court sentenced Valdez accordingly. *See id.* § 12.32. In five issues, which we reorder and treat as four, Valdez argues: (1) there is

legally insufficient[1] evidence supporting his conviction; (2) he was denied the right to have a unanimous jury verdict; (3) the trial court abused its discretion in overruling his objections to extraneous offense evidence; and (4) the judgment is void because it does not accurately reflect the trial court's sentence. We affirm as modified.

## I.    BACKGROUND

A grand jury returned an indictment alleging that Valdez committed two or more acts of sexual abuse against A.K.,[2] a child younger than fourteen years of age, during a period that was thirty days or more in duration, by intentionally or knowingly causing the penetration of A.K.'s sexual organ by Valdez's sexual organ and finger and by intentionally or knowingly causing the penetration of A.K.'s mouth by Valdez's sexual organ. The case proceeded to trial at which the following evidence was adduced.

A.K., who was eighteen years old at the time of trial, lived with her mother and Valdez, her mother's boyfriend, in Victoria. According to A.K., Valdez began to sexually assault her at the age of ten. She described that the first instance occurred when she was asleep in her bed and awoke to find Valdez's hand touching her vagina under her shorts. Valdez then climbed on top of her, took off her clothing, and penetrated her vaginally with his penis and fingers. Valdez ejaculated on her blanket when he was finished and then left the room. Similar assaults continued through her age eleven year. Over time, he became more aggressive, pinning A.K.'s wrists down and forcefully penetrating her

---

[1] Valdez also argues that evidence supporting his conviction is factually insufficient. However, the Texas Court of Criminal Appeals has abrogated factual-sufficiency review in criminal cases. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

[2] We refer to the complainant, who was a minor when the alleged criminal acts occurred, by her initials to protect her privacy. We refer to the minor witnesses by their initials for the same reason.

vaginally. At times, Valdez would just lay his head on A.K.'s breasts. When A.K. was eleven years old, Valdez began vaginally penetrating her as she lay on her stomach. At that time, he also began forcing A.K. to perform oral sex. Valdez would ejaculate in her mouth and then would force her to swallow his semen by putting his hand over her mouth. Valdez threatened to kill A.K. if she ever told anyone about the assaults. When A.K. said she would tell her mother, Valdez laughed and said her mom knows but does not care. A.K. stated that the sexual assaults occurred at night when her mom was at work. On A.K.'s twelfth birthday, Valdez told her that his gift to her was that he would not sexually assault her that night.

When A.K. was fourteen, she told her aunt that Valdez pressed his erect penis to her backside while they were wrestling. A.K. told her mother the next day, but her mother responded that she should not lie about people and that she was going to slap A.K. Shortly thereafter, A.K. began living with her grandparents, while her mother continued to reside with Valdez.

A.V. testified that she lived with Valdez when she was fourteen or fifteen years old, when Valdez was dating A.V.'s stepmother. According to A.V., Valdez frequently commented on the size of her breasts. She recalled one occasion where Valdez picked up her legs while she was laying on the couch and looked at her bottom underneath her shorts. On another occasion, she sat next to him on the couch, and Valdez placed his hand under her and squeezed her bottom. Finally, she recalled an instance where she and her step-sister A.B. entered the family room and observed Valdez watching pornography on the television.

3

A.B. testified that Valdez was her mother's ex-husband. She recalled an incident when she was ten years old when Valdez exposed his penis to her.

C.V. is Valdez's daughter. She never lived with Valdez but would stay the night at his house on occasion. At the age of eleven, she recalled that she laid in Valdez's bed late one night because she was scared, and Valdez proceeded to rub her breast and genital area over her clothing.

Veronica Briseno, a forensic interviewer with the Hope Child Advocacy Center, testified regarding her interview with A.K. According to Briseno, A.K. described how Valdez would sexually abuse her by digital and penile penetration of her vagina, as well as penile penetration of her mouth. A.K. described the acts as gross and painful. A.K. told Briseno that the abuse happened continuously between the age of ten and twelve or thirteen. Leslie Kallus, a Sexual Assault Nurse Examiner, examined A.K., and testified that A.K. reported acts of sexual abuse by Valdez consistent with what A.K. reported to Briseno.

Meagan Gumm provided counseling for A.K. According to Gumm, A.K. still experiences flashbacks and nightmares regarding the sexual abuse. A.K. experiences feelings of worthlessness and being unloved. A.K. has self-esteem issues and has attempted suicide.

Following the presentation of evidence, the jury found Valdez guilty of continuous sexual abuse of a child and assessed punishment at life imprisonment. *See id.* This appeal followed.

## II. LEGAL SUFFICIENCY

In his first issue, Valdez challenges the sufficiency of the evidence supporting his conviction.

### A. Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731–32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.*

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). A person commits continuous sexual abuse of a child if:

> (1)  during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the

5

acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

*See* TEX. PENAL CODE ANN. § 21.02(b).

Section 21.02 . . . is defined in terms of other acts that *by their terms* require a culpable mental state. Section 21.02's express requirement that these acts be committed is therefore functionally indistinguishable from an express requirement of the mental state essential to their commission. Section 21.02 need not prescribe some additional mental state because its *actus reus* is merely the repeated commission of acts already requiring culpable mental states.

*Buxton v. State*, 526 S.W.3d 666, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Lane v. State*, 357 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)).

Relevant to the indictment here, an act of sexual abuse includes aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 21.02(c)(4). A person commits aggravated sexual assault of a child if he or she intentionally or knowingly causes the penetration of the sexual organ of a child younger than fourteen years of age or causes the penetration of the mouth of a child younger than fourteen years of age by the sexual organ of the actor. *Id.* § 22.021(a)(1)(B)(i), (ii).

## B.  Analysis

Valdez's entire argument for this issue is as follows: "A scintilla of evidence was not introduced by the State that [he] acted with the intent to arouse or gratify [his] sexual desires." Beyond setting out the standard of review, he fails to support this contention with argument or citations to authorities and the record. *See* TEX. R. APP. P. 38.1(i).

Nevertheless, we will address the merits of this issue in the interest of justice. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016).

The intent to arouse or gratify sexual desire is not an explicit element of aggravated sexual assault of a child—the underlying predicate offense—unlike the offense of indecency with a child. *Compare* TEX. PENAL CODE ANN. § 22.021, *with* § 21.11. However, the Fort Worth Court of Appeals has held that "'[i]ntent to arouse or gratify sexual desire' is an implicit element of aggravated sexual assault of a child." *Sarabia v. State*, 227 S.W.3d 320, 323 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)); *see also Evans v. State*, 299 S.W.3d 138, 142 (Tex. Crim. App. 2009) (explaining that the intent-to-arouse-or-gratify element need not be expressly stated in the penal code section describing aggravated sexual assault of a child because of its descriptive title and because the required conduct is so severe "that the statute would not be applied to any legitimate handling of the child"). The intent element may be inferred from circumstantial evidence, "such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Even assuming that a hypothetically correct charge would instruct the jury that the State was required to prove intent to arouse or gratify, we find the evidence sufficient to support such a finding in this case. "The testimony of a child sexual abuse victim alone is sufficient to support a conviction for . . . aggravated sexual assault." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (citations omitted). The child complainant in this case testified that Valdez engaged in multiple, repeated sexual acts against her, including penetrative sexual contact resulting

7

in ejaculation, which clearly establishes that Valdez acted with the intent to arouse or gratify his sexual desire. *See Cunningham v. State*, 726 S.W.2d 151, 155 (Tex. Crim. App. 1987) (noting that, while the aggravated sexual assault statute does not require specific intent to arouse or gratify sexual desire, the legislature has recognized that penetration may show such intent). We hold that a rational trier of fact could have found the challenged element beyond a reasonable doubt. *See Joe*, 663 S.W.3d at 732. We overrule Valdez's first issue.

### III.    JURY UNANIMITY

In his second issue, Valdez argues he was denied the right to due process and a jury trial because the jury verdict was not unanimous. Specifically, Valdez argues that, based on the jury charge, there "is no way to determine" if the jury was unanimous on which underlying acts Valdez committed.

### A.    Standard of Review & Applicable Law

The trial court must instruct the jury on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. If an appellant claims that the trial court failed to do so, we review the "alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The appellant's failure to preserve the error impacts only the degree of harm required for reversal. *See Reed v. State*, 680 S.W.3d 620, 625–26 (Tex. Crim. App. 2023). Unpreserved charge error, as in this case, warrants reversal only if the error resulted in egregious harm. *Id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). An error causes egregious harm if it has an actual (as opposed to a theoretical) impact that "affects the

very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Reed*, 680 S.W.3d at 626; *see Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). This is a "difficult standard and must be proved on a case-by-case basis." *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). Every juror must agree that "the defendant committed the same, single, specific criminal act." *Id.* But this does not mean that the "jury must unanimously find that the defendant committed that crime in one specific way." *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). In other words, "[t]he unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents." *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004).

## B.  Analysis

Here, the abstract portion of the charge provided the statutory definition of continuous sexual abuse of a child and the underlying alleged acts of aggravated sexual assault. The charge then instructed the jury regarding unanimity as follows:

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

The application portion of the charge instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that [Valdez],

9

being 17 years of age or older, did then and there during a period that was 30 or more days in duration, commit two or more of the following acts of sexual abuse against [A.K.] who was a child younger than 14 years of age at the time the acts of sexual abuse occurred, to wit: [describing the three charged acts of aggravated sexual assault of a child in the disjunctive]. Then you will find [Valdez], "Guilty" of the offense of CONTINUOUS SEXUAL ABUSE OF A CHILD as alleged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find [Valdez], "Not Guilty" of the offense of CONTINUOUS SEXUAL ABUSE OF A CHILD as alleged in the indictment[.]

Consistent with the jury charge, the continuous sexual abuse of a child statute expressly provides that "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). Rather, "[t]he jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* We have previously held that § 21.02(d) does not violate the jury-unanimity requirement because the individual "acts of sexual abuse are merely the manner and means of committing an element of the offense." *Reckart v. State*, 323 S.W.3d 588, 601 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd); *see also Perez v. State*, 689 S.W.3d 369, 381 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (mem. op., not designated for publication). Many of our sister courts have reached the same conclusion. *See Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.) (collecting cases). Valdez offers no argument as to why we should revisit this settled issue of law, and we decline to do so. Accordingly, we conclude that the jury charge in this case was not erroneous. We overrule Valdez's second issue.

10

## IV. EXTRANEOUS OFFENSE EVIDENCE

In his third issue, Valdez argues that the trial court abused its discretion in admitting extraneous offense evidence pursuant to article 38.37 of the code of criminal procedure because: (1) the evidence did not meet the threshold standard for admission; (2) the probative value of such evidence was far outweighed by the prejudice to Valdez; and (3) the State did not timely notify Valdez of its intent to introduce such evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37.

The trial court conducted a pre-trial hearing, during which it heard the testimony of A.B., A.V., and C.V. Valdez objected to the admission of this testimony on the bases asserted on appeal. The trial court overruled the objections, and the witnesses proceeded to testify at trial as outlined above.

### A. Standard of Review & Applicable Law

We review a trial court's evidentiary rulings for an abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). A trial court abuses its discretion if its evidentiary ruling lies outside the zone of reasonable disagreement. *Valadez v. State*, 663 S.W.3d 133, 143 (Tex. Crim. App. 2022). If its ruling falls within the zone of reasonable disagreement under any applicable legal theory, we will not intervene, even if the trial court gave an improper justification for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

Generally, Texas Rule of Evidence 404(b) prohibits the admission of extraneous offense evidence to prove a person's character or to show that the person acted in

11

conformity with that character. *See* TEX. R. EVID. 404(b). But at the trial of a defendant accused of, among other things, continuous sexual abuse of a child, evidence that the defendant committed a separate sex offense against another child may be admissible not withstanding Rule 404(b) "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Dies v. State*, 649 S.W.3d 273, 284 (Tex. App.—Dallas 2022, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B), (b)). "Essentially, article 38.37 is an evidentiary rule applicable to certain types of sexual abuse cases . . . that supersedes the application of Texas Rule of Evidence 404(b), and makes admissible certain extraneous offense evidence that Rule 404(b) does not." *Jeansonne v. State*, 624 S.W.3d 78, 95 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

## B.    Analysis

### 1.    Threshold Determination

First, Valdez argues that "the trial court abused its discretion in determining that the evidence to be admitted at trial was of a sort that would be adequate to support a finding by the jury that [Valdez] committed the separate offense beyond a reasonable doubt."

Before evidence under article 38.37 is introduced at trial, the trial judge must conduct a hearing outside of the jury's presence and "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1); *see Keller v. State*, 604 S.W.3d 214, 222 (Tex. App.—Dallas

12

2020, pet. ref'd). The State is not required to prove that the defendant committed the extraneous offense beyond a reasonable doubt at the article 38.37 hearing. *Keller*, 604 S.W.3d at 226. Rather, it has the burden of producing sufficient evidence from which the trial court could determine that the evidence will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt. *Id.*

During a pretrial hearing, each witness described extraneous offense acts consistent with their trial testimony as outlined above. Their testimony sufficiently described actions by Valdez which would constitute the separate sex offense of indecency with a child. *See* TEX. PENAL CODE ANN. §§ 21.11(a) (defining the offense of "indecency with a child" by sexual contact or by exposure), (c)(1) (defining "sexual contact" to include "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of the child"). A child victim's testimony alone is sufficient to support a conviction for indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07; *see Keller*, 604 S.W.3d at 226. Accordingly, we conclude the trial court did not abuse its discretion by finding that the witnesses' testimony would be adequate to support a finding by the jury that appellant committed the extraneous offense beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1); *Perkins*, 664 S.W.3d at 217.

### 2. Rule 403

Valdez also argues that the trial court abused its discretion by overruling his Rule 403 objection to the extraneous offense evidence because such evidence was unrelated and not sufficiently comparable to the charged offense, and therefore its probative value

13

is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

Under Rule 403, a trial court may exclude evidence concerning extraneous sexual offenses, notwithstanding article 38.37, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See id.*; *Price v. State*, 594 S.W.3d 674, 680 (Tex. App.—Texarkana 2019, no pet.). When considering a Rule 403 objection, the trial court must balance: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponent's need for the evidence. *Perkins*, 664 S.W.3d at 217 (citing *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019)).

As to the first factor, evidence of separate sexual offenses is "probative on the issues of intent and a defendant's character or propensity to commit sexual assaults on children." *Price*, 594 S.W.3d at 680. Here, Valdez's sexually motivated actions, including indecency by sexual contact and exposure, toward other minor females in his household are highly probative of Valdez's propensity to engage in sexual abuse of A.K. This factor weighs in favor of admission.

Regarding the second factor, "sexually related bad acts and misconduct involving children are inherently inflammatory," but "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Further, article

14

38.37 expressly authorizes the admission of such evidence "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Nothing in the record suggests that the extraneous offense evidence influenced the jury to decide the case on a basis other than authorized by the code of criminal procedure. Additionally, the extraneous offenses were less inflammatory than the offense for which Valdez was being tried. *Cf. Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.— Tyler 2015, no pet.) (noting that extraneous sexual offense evidence involving another child was "more repugnant and inflammatory than the offense alleged against" named complainant, but still holding that trial court did not abuse its discretion in overruling 403 objection). This factor also weighs in favor of admission.

Third, the State did not spend an inordinate amount of time presenting the extraneous offense evidence. Each witness's testimony was less extensive than testimony regarding the primary complainant. This factor favors admission.

Finally, we consider the State's need for the evidence. The State's case was based entirely on the allegations of A.K. As is typical in sexual abuse cases, there was no corroborating eye-witness testimony or physical evidence. As such, the State's need for the extraneous offense evidence was substantial. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (determining that the State's need for evidence "weighs strongly in favor of admission" because without it, their case would have amounted to the complainant's word against the defendant's); *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (concluding that trial court could

15

have reasonably found that State's need for evidence was "considerable" because there were no corroborating eyewitnesses or physical evidence, and the State had to rebut defensive theory of fabrication). This factor weighs in favor of admission.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in finding that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Perkins*, 664 S.W.3d at 217.

### 3. Timeliness of Notice

In Valdez's final challenge to the extraneous offense evidence, he argues that the trial court should have excluded the evidence because the State did not timely notify Valdez of its intent to present such testimony. The State responds by conceding that its notice to present extraneous offense evidence was untimely but that Valdez could not have been surprised because evidence of the extraneous offenses was produced in discovery. The State further maintains that Valdez's remedy for surprise was to move for a continuance, which he did not do.

Section 3 of article 38.37 of the code of criminal procedure required that the State give notice of its intent to introduce extraneous-offense evidence "not later than the 30th day before the date of the defendant's trial." TEX. CODE CRIM PROC. ANN. art. 38.37, § 3. The purpose of requiring the State to provide notice regarding its intent to use evidence of extraneous offenses is to prevent the defense from being surprised and to allow the defendant adequate time to prepare for the State's introduction of such evidence. *Jeansonne*, 624 S.W.3d at 98 (citing *Villarreal v. State*, 470 S.W.3d 168, 176 (Tex. App.—

16

Austin 2015, no pet.)); *see Cole v. State*, 987 S.W.2d 893, 897 (Tex. App.—Fort Worth 1998, pet. ref'd) (analyzing prior version of article 38.37, § 3 and reasoning that "[t]he purpose of the notice requirement is to prevent surprise to the defendant and apprise him of the offenses the State plans to introduce at trial").

Valdez's remedy for being surprised by the State's untimely notice was to request a continuance. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."). Having failed to request a continuance, he has failed to preserve this issue for appeal. *See id.*; *Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous offense evidence, the defendant must request a continuance to mitigate the effects of surprise."); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.) (same).

## C.      Summary

Having rejected each of Valdez's arguments, we conclude that the trial court did not abuse its discretion in admitting the extraneous offense evidence. *See Perkins*, 664 S.W.3d at 217. We overrule Valdez's third issue.

## V.      FINE

In his fourth issue, Valdez argues that the judgment is void because it reflects a fine of $100, while "neither the jury's verdict nor the judge's sentencing reference any fine." The State concedes error but argues that this Court may correct the error by

modifying the judgment to reflect the assessment of no fine. We agree with the State.

We have "the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so." *Cazarez v. State*, 606 S.W.3d 549, 557–58 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see* TEX. R. APP. P. 43.2(b); *see also Dang v. State*, No. 13-21-00352, 2022 WL 3092560, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2022, no pet.) (mem. op., not designated for publication). This includes the authority to correct clerical errors in the judgment. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). The judgment, including the sentence assessed, is just the written declaration and embodiment of that oral pronouncement. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) (citations omitted); *see* TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a). In other words, "it is the pronouncement of sentence that is the appealable event, and the written sentence or order simply memorializes it and should comport therewith." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (quoting *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998)). Accordingly, "[w]hen the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls." *Id.* These variations are generally subject to our modification power. *See Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003).

"A fine is punitive in nature and is part of a defendant's sentence." *Anastassov v. State*, 664 S.W.3d 815, 820 (Tex. Crim. App. 2022). Therefore, we have the authority to strike a fine from a judgment that was not orally pronounced. *See Taylor*, 131 S.W.3d at 502 ("Since the judge did not orally assess a fine as part of Taylor's sentence when guilt was adjudicated, the Court of Appeals was correct to delete the fine from the judgment.").

Accordingly, we strike the $100 fine from the trial court's judgment. We sustain Valdez's fourth issue in part.

## VI. CONCLUSION

We affirm the trial court's judgment as modified.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of April, 2025.

19